**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| POWERBOX (USA), INC., a Colorado corporation,<br><br>          Plaintiff,<br><br>    v.<br><br>Honeywell International, Inc., a Delaware corporation,<br><br>          Defendant. | Civil Action No. 20-cv-3638<br><br>**COMPLAINT**<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff Powerbox (USA), Inc., by and through its undersigned counsel, as its Complaint against Defendant Honeywell International, Inc., alleges and states as follows:

## PRELIMINARY STATEMENT

Powerbox designs and markets premium quality power conversion systems and fulfills large-scale custom and expedited orders. Honeywell placed such an order for custom units from Powerbox on an urgent, expedited basis. Accordingly, Powerbox engaged its supply chain to accommodate Honeywell's order, and secured the materials necessary for the NCNR product at its own expense. Powerbox confirmed the order with Honeywell at a total agreed price of $616,545.80, and accommodated Honeywell at every turn, including by stretching out the delivery schedule and holding inventory until Honeywell was ready to accept it. Now, Honeywell unilaterally seeks to avoid its obligation for the remaining units ordered, over 25% of the total. Despite advising Powerbox that Honeywell was "working on the cancellation fee," Honeywell subsequently terminated the remainder of its order, and claimed the inapplicable terms and conditions from its own order form allow it to wholly escape its contractual obligations without

liability. This Complaint seeks to make Honeywell honor its agreement and fairly compensate Powerbox for the outstanding balance of its order.

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Powerbox USA, Inc. ("Powerbox") is a Colorado corporation with its principal place of business in Bedford, New Hampshire. Powerbox designs and markets premium quality power conversion systems to companies around the world, including in the Southern District of New York.

2. Defendant Honeywell International, Inc. ("Honeywell") is a Delaware corporation with its principal place of business in Charlotte, North Carolina.

3. Jurisdiction is proper as there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332.

4. Venue is proper in this District as Honeywell is subject to personal jurisdiction in this District and one of the agreements at issue provides for exclusive jurisdiction of any dispute in the state or federal courts in New York, New York. 28 U.S.C § 1391.

## FACTS

5. On April 19, 2018, Lorena Lomeli, a commodity manager for Honeywell, sent an email to Powerbox's Regional Sales Manager, Matt Silva, titled: "Urgent Quote Request PN 1002133 // MPN PBSE1120 REV[,]" wherein Lomeli requested a quote for pricing of Powerbox's PBSE1120 product, and stated that "[t]his is very critical since we need to place the order ASAP with the best price available." Loreli's email is attached as **Exhibit 1**.

6. Silva responded on the same day, forwarding a quote Powerbox had just made to Honeywell's contract manufacturer, Flextronics. The quote to Flextronics was subject to

Powerbox's "Orgalime S 2012" terms and conditions (the "Orgalime Terms and Conditions"). Silva's April 19, 2018 email, including the quote to Flextronics, is attached as **Exhibit 2**.

7. On April 20, 2018, Anabel Noriega, a Material Analyst for Honeywell, sent Powerbox's Silva a Purchase Order for 2500 units (the "Initial Order"), appending the "Vocollect, Inc. Terms and Conditions of Purchase" (the "Vocollect Terms and Conditions"). Noriega's April 20, 2018 email, including the Purchase Order, is attached as **Exhibit 3**. Noriega also asked that Silva let Noriega "know if the material can be shipped sooner to our warehouse." *Id.*

8. On April 24, 2018, Powerbox sent an Order Acknowledgement as well as the Orgalime Terms and Conditions to Noriega. Powerbox's April 24, 2018 email, including attachments, is attached as **Exhibit 4**.

9. On April 26, 2018, Noriega advised Powerbox that Honeywell needed to put the Initial Order "on hold," and that she would confirm the actual quantity needed by Honeywell in the next week. Noriega's April 26, 2018 email is attached as **Exhibit 5**.

10. On May 29, 2018, Lomeli advised Silva that Honeywell would like to increase the Initial Order by an additional 1,920 units. Lomeli's May 29, 2018 email is attached as **Exhibit 6**.

11. On May 31, 2018, Jose Carlos Ortiz, a Materials Analyst for Honeywell, sent a revised purchase order that included the additional 1,920 units, increasing Honeywell's order to 4,420 units (the "Revised Order"). The Revised Order appended the Vocollect Terms and Conditions, and is attached, together with Ortiz's May 31, 2018 email, as **Exhibit 7**.

12. On June 1, 2018, Powerbox sent an order acknowledgement for the 4,420-unit Revised Order. Powerbox's Order Acknowledgement email is attached as **Exhibit 8**.

13. On June 4, 2018, Powerbox sent an order confirmation to Noriega with a delivery confirmation for the first 1,250 units that included the Orgalime Terms and Conditions (attached as **Exhibit 9**).

14. On June 7, 2018, Lomeli sent a requested shipping schedule for the 4,420 units to Silva, and requested that Silva: "[p]lease get your management involved ASAP since we need to have confirmation on delivery dates ASAP." Lomeli's June 7, 2018 email is attached as **Exhibit 10**.

15. On June 12, 2018, Noriega sent an email to Silva, asking for an update on the Revised Order, and whether Silva knew when Honeywell would receive the first shipment. Noriega's June 12, 2018 email is attached as **Exhibit 11**.

16. On June 13, 2018, Silva responded to Noriega, stating that 1,250 units were confirmed for shipment, and that Silva "will continue to push for improvement, and update you next Wednesday." Silva's June 13, 2018 email is attached as **Exhibit 12**.

17. On June 15, 2018, Lomeli emailed Silva with an additional request on the Revised Order, stating that Honeywell needed to reduce the order to 2,500 units. Lomeli's June 15, 2018 email is attached as **Exhibit 13**.

18. Powerbox communicated the request to cancel the additional 1,920 units to its supply chain. However, due to efforts already undertaken and the custom status of the product, cancellation could not be accomplished without economic loss to Powerbox.

19. On July 3, 2018, representatives from Powerbox and Honeywell conducted a conference call regarding Honeywell's partial cancellation request. Powerbox advised Honeywell that cancelling the additional units was possible, but it would be necessary to reimburse Powerbox for the non-cancellable and non-returnable ("NCNR") raw materials already purchased by

Powerbox to support Honeywell's Revised Order, which amounted to $165,000. Alternatively, Powerbox proposed expanding the product delivery window to accommodate Honeywell.

20.     Later that day, John Slabich, a Honeywell representative, sent a follow-up email to Silva, asking "What quantity beyond 2,500 can still be canceled?" Slabich's July 3, 2018 email is attached as **Exhibit 14**.

21.     Silva responded on July 4, 2018 by reiterating that the 1,920 units added to the Initial Order "is NCNR. The $165K cancellation fee that we mentioned on the call yesterday is for the 1920 units. As we discussed, the best alternative is to push out the delivery into mid next year so that it better meets Honeywell's demand." Silva's July 4, 2018 email is attached as **Exhibit 15**.

22.     Thereafter, Chris Lins, Powerbox's Vice President and General Manager, sent additional correspondence to Honeywell advising that Powerbox "can cancel any quantity of material you wish to cancel, but there will be considerable cancellation fees to do so. I thought we agreed that Honeywell would not cancel any quantity of material, but rather schedule the delivery of the 1920 units in question for next year[.]" Lins' July 4, 2018 email is attached as **Exhibit 16**. Lins also noted that Powerbox "processed your order immediately upon receipt at Honeywell's urgent request." *Id.*

23.     On July 17, 2018, Lomeli emailed Silva, stating "[o]n the last conference call that we had regarding PN 1002133 we discuss the possibility for a partial cancellation that was not accepted from Powerbox but the schedule to push deliveries until next year was accepted, so below you will find the scheduled proposed for the following deliveries after the 250 pcs that we URGENTLY need." Lomeli's July 17, 2018 email, attached as **Exhibit 17,** included a delivery schedule for the 4,420 units. *Id.*

5

24. On August 29, 2018, Lomeli sent an updated delivery schedule for the Revised Order, which only included 3,450 units, 400 of which had already been delivered. Lomeli's August 29, 2018 email is attached as **Exhibit 18**.

25. On September 6, 2018, Silva responded to Lomeli, noting the issues apparent in Lomeli's August 29, 2018 email. In this September 6, 2018 email, attached as **Exhibit 19**, Silva noted that "[b]ased on our records there are 4020 units open beyond the 400 highlighted in Red. Your total below is only for 3050 units. Should the "0" listed for September be "1000" as stated in your July 17 email?" *Id.*

26. Lomeli replied on September 7, 2018, advising that Honeywell needed Powerbox's "support to hold the inventory, we need 200 pcs per month, that was the main reason for the urgent cancellation requested a couple of months ago, that was denied. Please get with your management and work with your factory to see if you can accommodate some material into some other orders and hold the inventory to meet our proposed schedule." Lomeli's September 7, 2018 email is attached as **Exhibit 20**.

27. Silva responded the same day that Powerbox "can certainly help on the additional 1920 pc order that we discussed back in July. That can be scheduled out into 2019. The 2100 units that I mentioned in my email below are from the original order back in April that we were expediting for immediate delivery. There are 2100 units in transit that we can disperse across the Oct, Nov, and Dec. However, these cannot be pushed out into 2019." Silva's September 7, 2018 email is attached as **Exhibit 21**.

28. Powerbox followed up on September 21, 2018, sending an email to Honeywell updating the delivery schedule for the Revised Order.

29. Lomeli responded later that day by stating that Honeywell could not accept Powerbox's proposed schedule, and needed Powerbox management's support to extend the delivery schedule. Lomeli's September 21, 2018 email, attached as **Exhibit 22**, further stated that "[f]or the 1920 we still need to keep pushing the date since we will start needing aprox [sic] 200 pcs per month on Aug/2019. I will really appreciate your support on this very critical request." *Id.*

30. On October 18, 2018, Silva emailed Lomeli concerning the delivery schedule. Silva's new proposed schedule provided that shipping of the 1920 units would start as Lomeli requested at 200/monthly in August 2019. Silva's October 18, 2018 email is attached as **Exhibit 23**. Silva reported that Powerbox had "been as flexible as possible in order to help alleviate inventory impacts on Honeywell. While this may not be exactly what you asked for, I think you will see that we are agreeing to all your requests except for the 700 unit push out to Apr 2019. That is just not something we can do at this time." *Id.*

31. From October 2018 through February 2019, both parties continued performing under the Revised Order without issue.

32. On February 28, 2019, Lomeli emailed Silva that "[w]e urgently need your support with the balance of this PO 1920 pcs, we have reviewed 2019 – 2020 FCST and we immediately need to cancel the balance of the order since we don´t see enough consumption on this part. I really need for you to consider to send us a "cancellation fee" and stop the production and procurement of raw material as soon as TODAY. This is critical and we need your support to stop shipments on this material and let us know if you have any other options that you would you be able to offer to reduce the impact to our inventory." Lomeli's February 28, 2019 email is attached as **Exhibit 24**. Lomeli further advised that she "will really appreciate your support on this very critical issue

and review it with your top management, we are ready to discuss any option that you can provide. This is the top priority with our management." *Id.*

33. On March 11, 2019, Silva responded to Lomeli, stating that he "escalated this up the chain within Powerbox and with our suppliers. Unfortunately, the situation has not changed since we visited this topic back last fall. The cancellation fee will be 100% the value of the PO. We have done our best to mitigate the short term impact on Honeywell by pushing out deliveries 12 months." Silva's March 11, 2019 email is attached as **Exhibit 25**.

34. From March through May 2019, the parties continued performing under the Revised Order without issue.

35. On June 7, 2019, Lomeli emailed Silva with the subject line "Urgent Cancellation Fee PN CM-710-110[,]" and stated that "[w]e urgently need to cancel the partial quantity left on PO 4413032584 for PN CM-710-110, please let me know the cancellation fee that we will need to pay to cancel these 1920 pcs, this is CRITICAL I need a response today." Lomeli's June 7, 2019 email is attached as **Exhibit 26**.

36. Silva responded the same day, reiterating Powerbox's position, and noting that "[t]his has been elevated to our CEO multiple times. Nothing has changed on our end. If you need to cancel, the fee will be equal to 100% the remaining open balance of the PO. We have done our best to mitigate the impact for you by pushing out deliveries for an extended period of time. I wish there was more we could do, but our hands are tied at this point." Silva's June 7, 2019 email is attached as **Exhibit 27**.

37. Lins further followed up with Honeywell, noting that "Matt [Silva] is correctly describing the escalation path for this subject matter. Matt has done an excellent job of advocating on Honeywell's behalf. The cancellation fee, however, is firm at 100% of the order value. If you

recall, PRBX expedited this order per Honeywell guidance at the time of order placement. In so doing, we made commitments to our supply chain that we cannot erase it mitigate without penalty. In this instance, the penalty is 100% of the order value." Lins' June 7, 2019 email is attached as **Exhibit 28**.

38. From June through October 2019, the parties performed under the Revised Order without issue.

39. On November 6, 2019, Powerbox sent a shipping notification for 600 units to Noriega. The shipping notification is attached as **Exhibit 29**.

40. Lomeli emailed Silva on November 6, 2019, stating that Honeywell "received the notification of a shipment, we need you to hold the shipment since we are working on the cancellation fee, we cannot receive these parts, please your urgent support." Lomeli's November 6, 2019 email is attached as **Exhibit 30**.

41. On November 21, 2019, Lins emailed Lomeli, reiterating Powerbox's position, stating: "Hello, Lorena! As we have previously discussed, the PO amount for this cancellation PO will be 100% of the order value. 1920 units @ $139.45 each = $267,744.00[.] Upon receipt of your cancellation PO in this amount, we will negotiate the return of inventory." Lins' November 21, 2019 email is attached as **Exhibit 31**.

42. On December 16, 2019, Lins emailed Noriega, Lomeli, and four other Honeywell representatives, stating that personnel at Powerbox "have not received any further correspondence from you with regards to this matter. Attached is an overdue invoice for material shipped against the subject order. Please remit payment immediately." Lins' December 16, 2019 email is attached as **Exhibit 32**.

43. After receiving no response, Lins followed up with the same recipients on January 3, 2020, providing a bullet-point synopsis of the chronology of this matter and asking "[w]hich of you will accept responsibility for this action on behalf of Honeywell?" In his January 3, 2020 email, attached as **Exhibit 33**, Lins noted, among other things, that Powerbox "did what Honeywell requested PRBX do - expedite delivery of additional units[.]" After Powerbox "secured supply chain commitments to satisfy Honeywell's request, and confirmed doing so with Honeywell," Lins noted, "Honeywell changed course and requested PRBX cancel the urgent upside request[,]" and Powerbox "attempted to satisfy this Honeywell request, but our supply chain commitments had already been secured and the cancellation fee would be 100% of the order value - 1920 units @ $139.45 each = $267,744.00[.]" *Id.*

44. On January 31, 2020, Jonathan Nolfi, a Strategic Sourcing Manager for Honeywell, emailed Lins and attached a letter terminating the remainder of the Revised Order (the "Termination Letter"). Nolfi stated: "Attached is Honeywell's response regarding PO 845562. We are agreeing to accept the 800 units shipped to our site in November and December." Nolfi's January 31, 2020 email is attached as **Exhibit 34**, and the Termination Letter is attached as **Exhibit 35**.

45. The Termination Letter stated in pertinent part: "Pursuant to Section 20.2 of the Vocollect, Inc. Terms and Conditions of Purchase ("Terms"), this letter serves as written notice that Vocollect is canceling any remaining work under PO 845572. As such, the remaining 1,120 units of the installment contract at $156,228.80 are cancelled effective February 6, 2020." *See* Ex. 35. The Termination Letter continues that "[a]s such, Vocollect shall pay Powerbox for the units received and accepted by Honeywell prior to the date of termination in accordance with

Section 20.3 of the Terms, which totals $460,317.00, $348,725.00 of which has been previously paid." *Id.*

46. Lins emailed Nolfi on February 1, 2020, noting that "[t]he terms and conditions of this order are based on PRBX terms and conditions, not Honeywell's." Lins' February 1, 2020 email, attached as **Exhibit 36**, further stated that "Honeywell placed an order against a NCNR quote, based on PRBX terms. Furthermore, Honeywell later agreed to extend the delivery window rather than pay the cancellation fees. Honeywell does not get to arbitrarily decide to reverse course without consequence when PRBX has finished goods on hand." *Id.*

47. Due to Honeywell's actions, Powerbox has incurred a loss in the amount of $156,228.80.

## COUNT I
### (Breach of Contract)

48. Powerbox adopts and incorporates paragraphs 1 through 47 of this Complaint as though fully set forth herein.

49. The Revised Order constitutes a valid and enforceable contract between Powerbox and Honeywell. The conflicting terms contained within the Orgalime Terms and Conditions and the Vocollect Terms and Conditions did not form part of the parties' contract. *See* N.Y. UCC § 2-207.

50. Powerbox substantially performed its material obligations under the Revised Order.

51. Honeywell is in material breach of its obligations under the Revised Order by failing and refusing to accept the 1,120 units of custom goods that Honeywell requested on an expedited basis.

52. As a result of Honeywell's breach, Powerbox has suffered a loss of $156,228.80.

53. Powerbox is further entitled to recover prejudgment interest at the rate of nine percent per annum. NY CLPR §§ 5001, 5004 (2012).

WHEREFORE, Plaintiff Powerbox (USA), Inc. respectfully requests entry of judgment in its favor in the amount of $156,228.80, plus prejudgment interest and costs, against Honeywell International, Inc., and for such further and additional relief as the Court deems necessary and just.

## COUNT II
### (UCC – Pled in the Alternative to Count I)

54. Powerbox adopts and incorporates paragraphs 1 through 47 of this Complaint as though fully set forth herein.

55. Honeywell ordered 4,420 units of the PBSE1120 product from Powerbox on an urgent, expedited basis.

56. Powerbox engaged its supply chain to accommodate Honeywell's order.

57. Powerbox secured the materials necessary for all 4,420 units of this NCNR product at its expense.

58. Powerbox confirmed the order with Honeywell for 4,420 units at a total agreed price of $616,545.80.

59. Honeywell then anticipatorily repudiated its obligation to purchase the remaining 1,120 units.

60. Honeywell's obligation to purchase all 4,420 units was established pursuant to UCC § 2-207(3).

61. PBSE1120 is a full-custom product specific to Honeywell. Powerbox has no ability to sell the remaining 1,120 units to any other customer, and therefore could not mitigate its damages.

62.     Pursuant to UCC § 2-709, Powerbox is entitled to incidental damages as well as the purchase price of the remaining 1,120 units.

WHEREFORE, Plaintiff Powerbox (USA), Inc. respectfully requests entry of judgment in its favor in the amount of $156,228.80, plus its incidental damages, prejudgment interest and costs against Honeywell International, Inc., and for such further and additional relief as the Court deems necessary and just.

### DEMAND FOR A JURY TRIAL

Plaintiff Powerbox (USA), Inc. hereby demands a trial by jury on all issues so triable of right.

Dated: May 11, 2020                                                   Respectfully submitted,

**POWERBOX (USA) INC.**

By: /s/ Joel A. Stein
   One of Its Attorneys

Joel A. Stein #JS1420
**SCHOENBERG FINKEL NEWMAN & ROSENBERG, LLC**
222 S. Riverside Plaza, Suite 2100
Chicago, Illinois 60606
(312) 648-2300
(312) 648-1212 (fax)
joel.stein@sfnr.com