USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: October 20, 2020

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
POWERBOX (USA), INC.,               :
                                    :
                  Plaintiff,        :     20 Civ. 3638 (VM)
                                    :
    - against -                     :     DECISION AND ORDER
                                    :
HONEYWELL INTERNATIONAL, INC.       :
                                    :
                  Defendant.        :
-----------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

Plaintiff Powerbox (USA), Inc. ("Plaintiff" or "Powerbox") commenced this action by a complaint filed against Defendant Honeywell International, Inc. ("Defendant" or "Honeywell") for breach of contract, or in the alternative, violations of the Uniform Commercial Code. (See "Complaint," Dkt. No. 1 ¶¶ 48-62.)

Pending before the Court is a pre-motion letter submitted by Honeywell regarding its anticipated motion to dismiss. (See the "July 2 Letter," Dkt. No. 17.) The Court also received a letter response from Powerbox (see the "July 9 Letter," Dkt. No. 18), and a reply letter from Honeywell (see the "July 24 Reply Letter," Dkt. No. 19). The Court construes Honeywell's letters as a motion by Honeywell to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal

1

Rules of Civil Procedure ("Rule 12(b)(6)") (the "Motion").[1] For the reasons set forth below, the motion is DENIED.

## I. BACKGROUND

A. FACTS[2]

On April 19, 2018, Lorena Lomeli ("Lomeli"), a commodity manager for Honeywell, sent an email to Powerbox's Regional Sales Manager, Matt Silva ("Silva"), requesting a quote for pricing of one of Powerbox's products. After Silva sent a quote, Anabel Noriega (Noriega"), a Material Analyst for Honeywell, sent a purchase order (the "Initial Order") for 2,500 units. The purchase order identified the purchasing party as Vocollect, Inc. ("Vocollect") and was sent along with a document titled "Vocollect Inc. Terms and Conditions of Purchase." (Complaint ¶ 7, Ex. 3.) Shortly after, Powerbox sent an Order Acknowledgement, noting that the products would be shipped to "Honeywell Vocollect." (Id., Ex. 4.)

On April 26, 2018, Noriega emailed Powerbox that Honeywell needed to put the Initial Order on hold and that the following week she would confirm the actual quantity needed. On May 29, 2018, Lomeli emailed Silva that Honeywell

---

[1] See Kapitalforeningen Lægernes Invest. v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (affirming the district court ruling deeming an exchange of letters as a motion to dismiss).

[2] The Court takes all facts alleged in the Complaint as true and construes the justifiable inferences arising therefrom in the light most favorable to the plaintiff, as required under the standard set forth in Section II.A below.

needed to add 1,920 to the Initial Order. Two days later, Jose Carlos Ortiz ("Ortiz"), a Materials Analyst for Honeywell, sent a revised purchase order that included the additional units (bringing the total of units to 4,420) (the "Revised Order"). Like the Initial Order, the Revised Order indicated that Vocollect was the purchasing party and included the Vocollect Inc. Terms and Conditions of Purchase. Powerbox sent another Order Acknowledgment, noting that the products would be shipped to "Honeywell Vocollect." (Id., Ex. 8.)

Between June 7, 2018 and January 31, 2020, Lomeli, Noriega, and other Honeywell representatives continued to communicate with Powerbox about the Revised Order. For instance, on June 15, 2018, Lomeli emailed Silva requesting that the Revised Order be reduced to 2,500 units. While Silva attempted to communicate the request to cancel the 1,920 units to its supply chain, the cancelation could not be completed without economic loss to Powerbox. On July 3, 2018, representatives from Powerbox and Honeywell conducted a conference call regarding the request to cancel 1,920 units. During that call Powerbox informed Honeywell that a partial cancelation fee of $165,000 would accrue at this stage. Alternatively, Powerbox proposed revising the delivery schedule to accommodate Honeywell. Following the call, John

3

Slabich, a Honeywell representative, reached out to Powerbox asking about the cancelable quantity. On July 17, 2018, Lomeli emailed Silva proposing a revised delivery schedule for the 4,420 units. Lomeli and Silva continued discussing the Revised Order and the proposed changes to the delivery schedule over the course of the next few months.

While the parties performed under the Revised Order without issue for various stretches in 2018 and 2019, Lomeli periodically emailed Silva requesting that Powerbox charge a cancelation fee and cancel the remaining units. Powerbox responded that the cancelation fee would be the cost of the entire order.

On December 16, 2019, Powerbox emailed Lomeli, Noriega, and other Honeywell representatives regarding an overdue invoice for materials. After receiving no response, Powerbox followed up in early January 2020. On January 31, 2020, Jonathan Nolfi, a Strategic Sourcing Manager for Honeywell, emailed Powerbox "Honeywell's response" regarding the Revised Order and attached a letter terminating the remainder of the order (the "Termination Letter"). (Id. ¶ 44, Ex. 35.)

B.  THE PARTIES' ARGUMENTS

Honeywell argues that Powerbox cannot assert a breach-of-contract claim against it because Honeywell is not a party to the alleged agreement with Powerbox. Honeywell points to

4

the Initial Order, which Powerbox attached to its Complaint. As Honeywell notes, the Initial Order and Revised Order are on Vocollect header; identify the purchasing party as Vocollect; list "Vocollect, Inc." as the "authorized signat[ory];" and state that the purchase order "is issued by the member of the Honeywell International Inc. group of companies identified on the face of this document." (Complaint, Exs. 3 & 7.) Similarly, the Order Acknowledgements state that the goods would be shipped to "Honeywell Vocollect." (Id., Exs. 4 & 8.) Honeywell also relies on the Termination Letter, signed by Cory MacLaughlin on behalf of Vocollect, Inc., which states that "Vocollect is canceling any remaining work" under the order and that "Vocollect shall pay Powerbox for the units received and accepted." (Id., Ex. 35.)

While Powerbox argues that Honeywell is a signatory to the contract, even assuming it is not, Powerbox contends that Honeywell is still a proper defendant. Powerbox claims that Honeywell employees were involved for the entirety of the transaction, from the initial quote request to the alleged breach. Because of Honeywell employees' participation in the contract negotiation and performance, Powerbox argues that Honeywell manifested an intent to be bound by the contract and can be held liable for breach of contract.

5

## II. LEGAL STANDARDS

A. <u>RULE 12(B)(6) MOTION TO DISMISS</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. <u>See</u> <u>id.</u> However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief about the speculative level." <u>Twombly</u>, 550 U.S. at 555.

In resolving a Rule 12(b)(6) motion, the Court's task is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." <u>In re Initial Pub. Offering Sec. Litig.</u>, 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks omitted), <u>aff'd</u> <u>sub</u> <u>nom.</u> <u>Tenney v. Credit Suisse First Bos. Corp.</u>, No. 05 Civ. 3430, 2006 WL 1423785 (2d Cir. May 19, 2006). In this context, the Court must draw reasonable

inference in favor of the nonmoving party. See Chambers v. TimeWarner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). However, the requirement that a court accept the factual allegations in the complaint as true does not extend to legal conclusions. See Iqbal, 556 U.S. at 678.

B.   CONTRACTUAL LIABILITY FOR A NONSIGNATORY COMPANY

"Under New York law, a party who is not a signatory to a contract generally cannot be held liable for breaches of that contract." CityR Grp. Holdings LLC v. Foresite Realty Mgmt., LLC, No. 17 Civ. 7850, 2019 WL 1437519, at *3 (S.D.N.Y. Mar. 29, 2019). There are exceptions to this rule, however, such as when: (1) "the parent's conduct manifests an intent to be bound by the contract, which intent is inferable from the parent's participation in the negotiation of the contract;" (2) "the subsidiary is a dummy for the parent;" or (3) "the subsidiary is controlled by the parent for the parent's own purposes." Id. (citation omitted).

Accordingly, courts in this District have held that when a parent company "was intimately involved in and would benefit from the contract," the parent has manifested an intent to be bound by the contract and may be liable for breach of contract under New York law even if it was not a signatory to the contract. See, e.g., TransformaCon, Inc. v. Vista Equity Partners, Inc., No. 15 Civ. 3371, 2015 WL 4461769, at *5

7

(S.D.N.Y. July 21, 2015). For example, in TransformaCon, the allegations that the subsidiary had "agreed to the contract under [the parent's] watch and control" and senior executives of the parent company had reviewed and approved various aspects of the contract sufficiently indicated that the parent company had manifested an intent to be bound by the contract. Id. Similarly, in Jennings v. Hunt Cos., Inc., 367 F. Supp. 3d 66, 71-72 (S.D.N.Y. 2019), the involvement of the nonsignatory company's officers in negotiations supported the conclusion that the nonsignatory company manifested an intent to be bound by the contract. Furthermore, in CityR Group Holdings, the court reasoned that the signature line in the agreements -- which identified the parent company as the "Manager" of the subsidiary signatory -- supported "a plausible inference" that the parent company intended to be bound by the contracts. 2019 WL 1437519, at *4.

### III. DISCUSSION

The Court denies the Motion because Powerbox has alleged sufficient facts at this preliminary stage to overcome the motion to dismiss. As an initial matter, although the parties dispute whether Honeywell or Vocollect is the signatory to the contract at issue, the factual assertions made by Powerbox give rise to the reasonable inference that Honeywell intended to be bound by the contract at issue.

First, the Complaint alleges that Honeywell representatives were involved in negotiating the Initial Order and Revised Order. For instance, Lomeli, a commodity manager for Honeywell, reached out to Powerbox for a quote, and Noriega, a Material Analyst for Honeywell, sent the purchase order. In addition, Lomeli emailed Powerbox to increase the units ordered, and Ortiz, a Materials Analyst for Honeywell, sent a revised purchase order.

Second, even after the Revised Order had been agreed upon, Honeywell representatives continued communicating with Powerbox to revise aspects of the order. (See, e.g., Complaint ¶¶ 17 ("Lomeli emailed [Powerbox] . . . stating that Honeywell needed to reduce the order to 2,500 units."); 19 ("On July 3, 2018, representatives from Powerbox and Honeywell conducted a conference call regarding Honeywell's partial cancellation request."); 20 ("Later that day, John Slabich, a Honeywell representative, sent a follow-up email . . . ."); 23 (noting that Lomeli emailed Powerbox about a modification of the shipping schedule); 26 ("Lomeli replied on September 7, 2018, advising that Honeywell needed Powerbox's 'support to hold the inventory . . . .'"); 35 (noting that Lomeli emailed Powerbox asking to cancel the partial quantity remaining from the order); 44 ("On January 31, 2020, Jonathan Nolfi, a Strategic Sourcing Manager for Honeywell, emailed [Powerbox]

9

and attached a letter terminating the remainder of the Revised Order" and containing "'Honeywell's response.'").)

Notably, Honeywell does not dispute that its representatives engaged in the alleged communications with Powerbox. Instead, it argues that Powerbox's claim must fail because it has not alleged a connection between Honeywell and Vocollect or any facts suggesting that Honeywell controlled Vocollect or used it as a dummy. (Dkt. No. 19, at 2.) But under New York law, it is not necessary for a nonsignatory company to control the signatory or use it as a dummy -- these facts merely support alternative theories for finding intent. See CityR Grp. Holdings, 2019 WL 1437519, at *3. Therefore, Honeywell's counterargument is unavailing.

In sum, Powerbox has made numerous allegations that Honeywell, through its representatives, played an active role in the creation and negotiations of the contract. These allegations support a plausible inference that Honeywell intended to be bound by the contract. See Jennings, 367 F. Supp. 3d at 71-72 (concluding that the involvement of the nonsignatory company's officers in negotiations supported an inference of the company's intent to be bound by the contract); TransformaCon, 2015 WL 4461769, at *5 (concluding that the parent company had manifested an intent to be bound by the contract in part because the parent's executives had

reviewed and approved aspects of the contract). Powerbox's allegations therefore raise material factual disputes that require discovery to resolve and thus under the Rule 12(b)(6) standard, the Court cannot adjudicate at this stage of the litigation.

## IV.   ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the motion so deemed by the Court as filed by defendant Honeywell International, Inc. to dismiss the Complaint of plaintiff Powerbox (USA), Inc. pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. No. 17) is **DENIED.**

**SO ORDERED.**

Dated:   New York, New York
        20 October 2020

_____
Victor Marrero
U.S.D.J.